**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **APRIL A. SUGGS,** | ) |
| **o/b/o E.C.S.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:13-CV-1781-VEH** |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.**     **INTRODUCTION**

Plaintiff April A. Suggs ("Suggs") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application on behalf of her minor child ("E.C.S.") for Childhood Supplemental Security Income ("SSI"). Suggs timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1] The court has carefully considered the record and,

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.[2]

## II.   FACTUAL AND PROCEDURAL HISTORY

ECS was six years old on her alleged onset date and nine years old on the date the ALJ issued his final decision. (Tr. 160). E.C.S. has no past relevant work experience and has never engaged in work. (Tr. 41). Suggs claims, on E.C.S.'s behalf, disability since February 3, 2009, due to Attention Deficit Hyperactivity Disorder ("ADHD"), oppositional defiant disorder ("ODD"), asthma and allergies. (Tr. 41, 193).

Suggs filed this application for Childhood Supplemental Security Income on February 3, 2009. (Tr. 160-166). The state agency denied her application initially and upon reconsideration. (Tr. 128-133). She timely requested a hearing before an Administrative Law Judge ("ALJ") on May 19, 2009. (Tr. 136). The hearing was held before an ALJ on February 15, 2011. (Tr. 77-104). The ALJ issued a decision denying her claim on March 4, 2011.[3] The Appeals Council declined to grant review of the

---

[2] The court notes that two decisions, by the same ALJ and for this same claim, are present in the record: one on March 4, 2011 (Tr. 56-76), and one on July 29, 2011 (Tr. 35-55). Perplexingly, neither party has explained why there are two decisions in the record, and both parties cite to portions of both decisions without discussion. The two come to the same conclusion on disability, and because the July 29, 2011, includes analysis of additional evidence submitted posthearing (Tr. 38), the court will use that one for purposes of review.

[3] See n. 2, *supra*, for discussion.

decision on July 24, 2013.

Suggs filed a Complaint with this court on September 25, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 5, 2014. (Doc. 9). Garrard filed a supporting brief (doc. 11) on March 20, 2014, and the Commissioner responded with her own (doc. 12) on April 2, 2014.

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. For children, the definition requires "marked and severe functional limitations," rather than (as for adults) the inability to do substantial gainful activity. 42 U.S.C. 1382c(a)(3)(C)(i). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

For children, there is a three-step evaluation process. 20 C.F.R. § 416.924(a). The sequential analysis goes as follows:

> First, the ALJ must determine whether the child is engaged in substantial and gainful activity. Second, if the child is not engaged in substantial and gainful activity, the ALJ must determine whether the child has an impairment or combination of impairments that is severe. Finally, at step three, the ALJ must determine whether the child's impairment meets, medically equals, or functionally equals the Listings.

*Gray ex rel. Whymss v. Commissioner of Social Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) (unpublished) (citing to 20 C.F.R. § 416.924(a)); *accord Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 84 (2d Cir. 2003). At step three, the ALJ evaluates the child's degree of limitation, if any, in six functional areas, called domains:

    (i)    acquiring and using information;

    (ii)    attending and completing tasks;

    (iii)    interacting and relating with others;

    (iv)    moving about and manipulating objects;

    (v)    caring for yourself; and

    (vi)    health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If there are marked limitations in two domains or an extreme limitation in one domain, the child's impairment, or combination of impairments, is deemed functionally equivalent to a listed impairment. *Id.* at § 416.926a(d). A limitation is "marked" if it "interferes seriously" with the child's abilities in that domain. *Id.*

## V.   ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. The claimant was born on July 19, 2002. Therefore, she was a school-age child on February 3, 2009, the date the application was filed, and is currently a school-age child.

    2.    The claimant had not engaged in substantial gainful activity since February 3, 2009, the application date.

    3.    The claimant had the following severe impairments: ADHD; oppositional defiant disorder; mood disorder NOS; hyperopia with astigmatism; asthma and allergic rhinitis; and allergies, particularly food allergies.

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., Appx. 1 (20 C.F.R. 416.924, 416.925 and 416.926).

    5.    The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. 416.924(d) and 416.926(a))

    6.    The claimant has not been disabled, as defined in the Social Security Act, since February 3, 2009, the date the application was filed.

## VI. ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or

---

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Suggs does not contend that the ALJ was incorrect in finding that E.C.S. did not meet a listed impairment, but disputes the ALJ's determination that E.C.S. did not have an impairment or combination of impairments that functionally equals the listings. (Doc. 11 at 4). Suggs argues that the ALJ's decision failed to accord proper weight to the opinion of E.C.S.'s treating psychiatrist, Dr. Kirk. (Doc. 11 at 5-10). On that basis, she contends that the decision was not supported by substantial evidence. (*Id.* at 10-12). Following review of the entire record, the court finds substantial evidence for the ALJ's decision to give no weight to Dr. Kirk's opinion.

The ALJ found that E.C.S. had no limitations in moving about and manipulating objects and less than marked limitations in the other five domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. (Tr. 44-50). In his determinations, the ALJ gave no weight to the opinion of her treating psychiatrist, Dr. Kirk, who opined that she had marked limitations in four of the six functional domains. (Tr. 583-85).The ALJ made this decision on the grounds that Dr. Kirk's opinion was inconsistent with other evidence. He noted that testing had indicated that her intelligence was average to low-average. (Tr. 44). The ALJ also pointed to the Teacher Questionnaire filled out by her

kindergarten teacher, which noted only one "obvious problem" in Interacting and Relating With Others, no problems in all other activities included in that domain, and only slight problems in her other domains. *Id*. Finally, he stated that Dr. Kirk's opinion was not supported by the medical records or the remainder of the evidence.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion is not bolstered by the evidence;

- the evidence supports a contrary finding; or

- the treating physician's opinion is conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005) (per curiam).

8

Here, the ALJ articulated several specific reasons for discrediting Dr. Kirk's opinion in his Assessment Form. (Tr. 44). As discussed above, the ALJ concluded that Dr. Kirk's opinion that E.C.S. was functionally disabled was not supported by the medical records and other evidence. He noted that her test results showed average to low-average intelligence and that her teacher noted only one obvious problem in any aspect of the six functional domains. The ALJ was thus adequately specific in outlining his reasons for discrediting Dr. Kirk.

After reviewing the record, the court finds that substantial evidence supports his reasons. The Questionnaire filled out by E.C.S.'s kindergarten teacher indicated only a few academic and social shortcomings: specifically, problems in her math skills, trouble waiting her turn in class, a tendency not to follow the rules during games, and taking things from the classroom. (Tr. 201-206). The only problem her teacher indicated to be more than "slight" was following rules, which was rated as an "obvious problem." (Tr. 204).  As to the question of her intellectual limitations, her test results show that she was average to low-average. (Tr. 549-553, 653-54). Furthermore, on her report card for the 2009-2010 academic year, E.C.S. received a C in math but As in spelling and reading (Tr. 588). She also made the A/B honor roll in December, 2010. (Tr. 605). On December 3, 2010, her school guidance counselor also reported that she was doing well in class and "has had no problems." (Tr. 604).

Reports from other medical professionals also contradict the opinions of Dr. Kirk. In March and June of 2011, following referrals by E.C.S.'s pediatrician and psychiatrist, Dr. Erin Smith, a licensed clinical psychologist, conducted a psychological evaluation. (Tr. 653). During the mental status examination, Dr. Smith judged E.C.S.'s interactions with her to be normal. (Tr. 653). Following questioning designed to test memory, intelligence, and other cognitive functions, E.C.S.'s cognition was found to be average to low-average to average. *Id.* Dr. Smith administered a standardized achievement test and found E.C.S. to be: within the average range of her age group in academic skills and fluency with academic tasks; high average in reading skills; average in math calculation skills; and low average in mathematics. (Tr. 655). Dr. Smith also administered a standardized test ("the CPT-2") designed to measure attention, impulsivity, and vigilance, on which E.C.S. scored within normal limits. (*Id.*). In her summary, Dr. Smith opined,

> "It is likely that [E.C.S.'s] academic and behavioral difficulties were related to poorly managed ADHD symptoms in the past. Based upon her performance on the CPT-2, [E.C.S.'s] current medication regimen is adequately controlling her ADHD symptoms at this time. It is likely that academic and behavioral issues will improve."

(Tr. 655).

After a consultative examination, Dr. John Haney, a licensed psychologist, on April 20, 2009, came to similar conclusions. (Tr. 490). Dr. Haney found E.C.S.'s

memory to appear intact and estimated her intelligence as "low average." (Tr. 490). He predicted that "with successful treatment, this youngster should be able to achieve at a level consistent with her aptitude." (Tr. 490-91).

In arguing that Dr. Kirk's opinion was supported by the record, Suggs points specifically to Dr. Kirk's treatment notes. (Doc. 11 at 8-9). However, as noted in the Commissioner's brief, much of Dr. Kirk's treatment notes appear to be based on statements from Suggs, E.C.S.'s mother, which are often inconsistent with the rest of the record. *(See, e.g.*, Tr. 431, 434, 605, 660). For instance, Suggs told Dr. Kirk on December 1, 2010, that E.C.S. was doing poorly on tests, but E.C.S. was currently on the A/B honor roll. (Tr. 605). Additionally, during three visits to E.C.S.'s school in the surrounding period (in October, November , and December, 2010), her therapist was told by the school guidance counselor and E.C.S. herself that she was doing well in school. (Tr. 604, 610, 616). Suggs also testified before the ALJ that E.C.S. did not make friends easily and did not have friends come to their house. (Tr. 88, 90).[5] However, on two different occasions, E.C.S. said that she has friends at school and plays with friends at her house. (Tr. 88, 102, 490). Also, her kindergarten teacher's February 3, 2009, Questionnaire reported that she had no problems in "playing

---

[5] Relatedly, the court observes that Dr. Kirk's notes on September 30, 2009, report that she "has been having difficulties . . . in her interactions with her peers." (Tr. 562).

cooperatively with other children" and "making and keeping friends." (Tr. 204).

A second reason that Dr. Kirk's treatment notes do not support findings of marked limitations has to do with the contents of the notes themselves. The most recent treatment notes by Dr. Kirk — from January 20, 2011, and February 24, 2011 — mention that she had "shown mild improvement" and "improved academically (Tr. 660, 668). Furthermore, Dr. Kirk's own observations of E.C.S., as opposed to statements based on reports from her mother, consistently noted little problems other than that her insight and judgment "at times [are] felt to be poor," and she "was mildly oppositional." (*See, e.g.*, Tr. 434-35, 644, 661)

Having considered the entire record, substantial evidence supports the ALJ's findings that there were no marked limitations in any of the six domains. The evidence is the least clear-cut regarding Interacting and Relating With Others; a physician for the state agency opined that she had a marked limitation in that domain (Tr. 494), and her teacher stated that she had an "obvious problem" in following rules. (Tr. 204). However, these problems were limited to cheating during classroom games and attempting to take small classroom toys home. (Tr. 204, 494). In other activities falling under the Interacting and Relating with Others domain, E.C.S. showed no problems. (*Id.*). In her hearing before the ALJ and in her examination by Dr. Haney, E.C.S. said that she has friends at school and plays with friends at her house. (Tr. 88,

102, 490). Therefore, the court concludes that substantial evidence supports the ALJ's finding of a less than marked limitation in this domain.

## VI.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**.  A separate final judgment will be entered.

**DONE** and **ORDERED** this the 17th day of December, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge